**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BENJAMIN WEITZ, individually and on behalf of all others similarly situated, | Case No. 25-cv-11706 |
| Plaintiff, | District Judge April M. Perry |
| v. | |
| TRANSUNION, LLC, | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION OR,
IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*)
Rebecca Kopplin (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
melanie.blunschi@lw.com
rebecca.kopplin@lw.com

Hanyu (Iris) Xie (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
iris.xie@lw.com

*Attorneys for Defendant Trans Union LLC*

**<u>TABLE OF CONTENTS</u>**

**Page**

I. INTRODUCTION ...............................................................................................................1

II. FACTUAL BACKGROUND ...........................................................................................2

    A. Trans Union's Products And Services ....................................................................2

    B. Plaintiff's Alleged Injury And Claims ...................................................................4

III. LEGAL STANDARD .......................................................................................................6

IV. ARGUMENT .....................................................................................................................6

    A. Plaintiff Lacks Standing, Warranting Dismissal Under Rule 12(b)(1)...................6

        1. Plaintiff Fails To Allege A Cognizable Personal Injury ............................7

        2. Plaintiff Fails To Allege A Redressable Injury.........................................12

    B. Plaintiff Fails To State A Claim, Warranting Dismissal Under Rule
       12(b)(6) .................................................................................................................13

        1. The Intrusion Upon Seclusion Claim Fails Absent Any Reasonable
           Expectation Of Privacy Or Highly Offensive Conduct ............................13

        2. The CIPA Wiretapping Claim Fails Absent Allegations Of
           "Content" Collection Or "In Transit" Interception....................................16

        3. Plaintiff Fails To Plead A CIPA Pen Register Claim ...............................19

        4. The Federal Wiretap Act Claim Fails On Multiple Grounds,
           Including The One-Party Consent Rule.....................................................21

        5. Unjust Enrichment Is Not A Standalone Claim And Did Not Occur ........24

V. CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ......................................................... 17

*Abuelhawa v. Santa Clara Univ.*,
529 F. Supp. 3d 1059 (N.D. Cal. 2021) ............................................................... 25

*Arast v. Pendelton*,
2014 WL 5469933 (N.D. Ill. Oct. 28, 2014)......................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................. 6

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ............................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................. 6

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ...................................................... 12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................... 17, 21

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................... 5, 24

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)........................................................... 11, 15

*Desnick v. American Broadcast Companies, Incorporated*,
44 F.3d 1345 (7th Cir. 1995) ......................................................................... 22, 23

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ............................................................................... 7

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........................................... 16, 17, 18

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)........................................................ 23

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ............................................................. 15

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................ 14

*Hannant v. Culbertson*,
   2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ........................................ 24

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020) ................................................ 14

*Heiting v. Taro Pharm. USA, Inc.*,
   728 F. Supp. 3d 1112 (C.D. Cal. 2024) ................................................ 18

*Hernandez v. Hillsides, Inc.*,
   211 P.3d 1063 (Cal. 2009) ................................................................... 13

*Hubbard v. Google LLC*,
   2024 WL 3302066 (N.D. Cal. July 1, 2024) .................................... 13, 14

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................ 14

*In re BPS Direct, LLC*,
   705 F. Supp. 3d 333 (E.D. Pa. 2023) ................................................... 10

*In re DoubleClick Inc. Priv. Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................. 23

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ............................................................... 13

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................. 25

*In re Google Location Hist. Litig.*,
   428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................. 15

*In re Google, Inc. Privacy Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) .............................................. 14, 15

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................... 14, 15

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................... 16

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ......................................................................... 17

*Jacobs v. Hanwha Techwin Am.*,
    Inc., 2021 WL 3172967 (N.D. Ill. July 27, 2021) ............................................. 12

*Ji v. Naver Corp.*,
    2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .................................................. 15

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................................................... 23, 25

*Khamooshi v. Politico LLC*,
    2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ...................................................... 10

*Kishnani v. Royal Carib. Cruises Ltd.*,
    2025 WL 1745726 (N.D. Cal. June 24, 2025) ................................................. 9, 19

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ......................................................................... 21

*Kurowski v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023) ............................................................... 24

*Lightoller v. Jetblue Airways Corp.*,
    2023 WL 3963823 (S.D. Cal. June 12, 2023) ................................................... 10

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................... 13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 6, 12

*Nabozny v. Optio Sols. LLC*,
    84 F.4th 731 (7th Cir. 2023) ............................................................................ 8

*Nayab v. Cap. One Bank, N.A.*,
    942 F.3d 480 (9th Cir. 2019) ..................................................................... 11, 15

*Newbold v. State Farm Mut. Auto. Ins. Co.*,
    2015 WL 13658554 (N.D. Ill. Jan. 23, 2015) ..................................................... 5

*Nowlin v. Pritzker*,
    34 F.4th 629 (7th Cir. 2022) ........................................................................... 11

*Oganyan v. Biolife Plasma Servs. L.P.*,
    2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .................................................... 10

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
    2022 WL 393572 (N.D. Ill. Feb. 9, 2022) ............................................................. 22

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ........................................................... 8, 9, 11

*Rivera v. Google, Inc.*,
    366 F. Supp. 3d 998 (N.D. Ill. 2018) .................................................... 8

*Rodriguez v. ByteDance, Inc.*,
    2025 WL 672951 (N.D. Ill. Mar. 3, 2025)............................... 14, 21, 22

*Rodriguez v. Culligan Int'l Co.*,
    2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................................... 10

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................... 22

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ................................ 10

*Sanchez v. Cars.com Inc.*,
    2025 WL 487194 (Cal. Super. Jan. 27, 2025) .............................. 20, 21

*Sharbaugh v. First Am. Title Ins. Co.*,
    2007 WL 3307019 (N.D. Ill. Nov. 2, 2007) ....................................... 3

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)............................................................................ 19

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........................ 8

*Smith v. YETI Coolers, LLC*,
    754 F. Supp. 3d 933 (N.D. Cal. 2024) ................................................ 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................ 6, 7

*Taha v. Int'l Bhd. of Teamsters, Loc.*
    781, 947 F.3d 464 (7th Cir. 2020) ...................................................... 6

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ........................................................... 20

*Thomas v. Papa Johns Int'l, Inc.*,
    2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th
    Cir. June 18, 2025)............................................................................ 13

*Thomas v. Pearl*,
   998 F.2d 447 (7th Cir. 1993) ................................................................... 11, 24

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).................................................................... 1, 6, 7, 11

*Valenzuela v. Super Bright LEDs Inc.*,
   2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)....................................... 18

*Vasil v. Kiip, Inc.*,
   2018 WL 1156328 (N.D. Ill. Mar. 5, 2018)........................................... 17

*Williams v. Visa, Inc.*,
   2025 WL 1518044 (N.D. Cal. May 28, 2025) ....................................... 25

*Williamson v. Curran*,
   714 F.3d 432 (7th Cir. 2013) ............................................................. 2, 5

*Xu v. Reuters News & Media Inc.*,
   2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)........................................... 10

*Zak v. Bose Corp.*,
   2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)......................................... 23

## STATUTES

18 U.S.C. § 2510 ..............................................................................................17

18 U.S.C. § 2510(4) ..........................................................................................21

18 U.S.C. § 2511(1)(a).......................................................................................21

18 U.S.C. § 2511(1)(d) ......................................................................................21

18 U.S.C. § 2511(2)(d) ......................................................................................22

Cal. Pen. Code § 631(a) .............................................................................2, 16, 17

Cal. Pen. Code § 638.50(b) .........................................................................12, 19

Cal. Pen. Code § 638.51(a) .....................................................................12, 19, 20

Cal. Pen. Code § 638.53.....................................................................................20

Cal. Pen. Code §§ 638.52(d)(1)-(3) ...................................................................20

CIPA § 631 ..................................................................................................18, 21

CIPA § 631(a) ..........................................................................................6, 16, 22

vi

CIPA § 638.51 ...................................................................................................................... 2

CIPA § 638.51(a) ........................................................................................................... 6, 12

CIPA §§ 638.50-638.53 ........................................................................................................ 20

## RULES

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1, 6, 13, 26

Fed. R. Civ. P. 12(b)(6) ................................................................................................ passim

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Trans Union LLC ("Trans Union") respectfully moves to dismiss this suit.

## I.      INTRODUCTION

Plaintiff's allegations are long on speculative conspiracy theories but short on factual allegations.  Plaintiff asserts five statutory and common law privacy claims based on alleged internet tracking by a variety of entities—but does not plead any facts establishing that he personally sustained a concrete injury sufficient to support standing or indicating that Trans Union played any role in the purported scheme.

Stripped of conclusory statements and recitals of legal standards, Plaintiff's factual allegations about his personal experience are threadbare.  Plaintiff identifies a single website that he visited once—the Bon Appétit food and entertaining website—and alleges that trackers installed on the website collected information about his visit and his device.  However, he does not claim to have entered any information on that website, nor could he plausibly allege that browsing the Bon Appétit website is remotely sensitive or confidential.  Plaintiff also alleges that Trans Union compiles "profiles" of information on individuals, but he does not specify any sensitive information subsumed within those "profiles," much less explain why the alleged "profiling" is entitled to the protection of privacy laws.

The Complaint thus fails at the threshold for lack of Article III standing.  To begin, Plaintiff does not plead a concrete, personal injury.  As the Supreme Court has cautioned, the courthouse door is shut to an "uninjured plaintiff" who seeks not "to remedy any harm to herself," but only "to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)."  *TransUnion LLC v. Ramirez,* 594 U.S. 413, 427–428 (2021). Causation and redressability are also lacking, given that the Complaint fails to allege that *Trans Union*, as opposed to third parties, incorporated any trackers into websites or mobile apps.

1

Even if he had standing, Plaintiff's claims should be dismissed on the merits.  *First*, the intrusion upon seclusion claim fails because, as courts in and out of this district have recognized, collection of basic digital data as alleged here—IP addresses, device identifiers, browsing history, and location—neither violates any reasonable expectation of privacy nor is highly offensive. *Second*, Plaintiff does not allege the requisite collection of "contents" or any interception while a communication was "in transit" for purposes of his wiretapping claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a).  *Third*, the "pen register" claim under CIPA § 638.51 fails, as the statute is limited to protecting "record" information, not contents, and Plaintiff does not plausibly allege that Trans Union affirmatively installed or used a "pen register." *Fourth*, the federal Wiretap Act claim similarly fails for not alleging "content" or interception during transmission, and because consent from the web and app developers defeats any potential liability as to Trans Union.  *Finally*, the unjust enrichment claim cannot survive as a standalone claim, and any collection of basic data while Plaintiff was browsing free content on the website is neither unjust nor at his expense.

## II.    FACTUAL BACKGROUND[1]

### A.    Trans Union's Products And Services

Trans Union is a credit and data reporting company headquartered in Chicago.  *See* Compl. ¶ 9.  Trans Union's offerings enable customers to manage credit risk, market to consumers, verify identities, and mitigate fraud.  *See* Annual Report ("Form 10-K") (Feb. 13, 2025), at 1 (attached hereto as Ex. A).[2]

---

[1] Unless otherwise noted, the facts recited here are based on the allegations of the Complaint and accepted as true only for purposes of this motion.

[2] The 2024 Form 10-K is cited at Complaint ¶ 50 n.33.  Accordingly, the document is incorporated by reference into the Complaint and subject to judicial notice as a public SEC filing.  *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (courts "may consider … documents that

Trans Union's parent company acquired Neustar in December 2021. *See* Compl. ¶ 53. Neustar is a registered data broker in California. *Id.* ¶ 15 & n.3–4.[3] Neustar's OneID platform bolstered Trans Union's identity resolution capabilities and allowed Trans Union to enhance its security posture. *See* Form 10-K at 2, 6.

Plaintiff alleges that Defendant Trans Union and/or Neustar make available "web pixel[s]," which are "piece[s] of code that website operators can integrate into their websites." Compl. ¶¶ 5, 74. Once installed, a pixel can be configured to measure actions taken by users on a website, and that data can help inform and improve the services provided by the website operator. *See id.* ¶¶ 73–76. Plaintiff also alleges that Trans Union "owns and operates" software development kits ("SDKs"), which are libraries of code from which mobile app developers may choose particular features to "load[] onto an app" as "building blocks for the creation of an application." *Id.* ¶¶ 5, 107–108. Among other functions, some SDKs include code that can help measure user activity on certain apps to support advertising and analytics. *See id.* ¶ 107–108.

Plaintiff alleges that Trans Union's "AGKN Trackers" are "a combination of web pixels and SDKs" that allegedly collect consumer data that Trans Union in turn allegedly sells or uses to enable targeted digital advertising. *Id.* ¶¶ 5, 44; *see also id.* ¶¶ 26–32, 52, 69–70. The pixels and SDKs allegedly "compil[e] highly detailed user profiles" about consumers that include identifiers

---

are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice" on motions to dismiss); *Sharbaugh v. First Am. Title Ins. Co.*, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (taking judicial notice of a 10-K form).

[3] The Complaint also alleges that a non-party, Trans Union Content Solutions LLC, is a registered data broker under California Law. *See* Compl. ¶ 14 n.3. Plaintiff attempts to conflate Trans Union Content Solutions LLC with Defendant Trans Union LLC without proffering any basis to disregard the corporate forms. *Id.* In any event, Plaintiff does not contend that either Neustar or Trans Union Content Solutions LLC failed to comply with any regulations applicable to registered data brokers in California.

and behavioral data, which are then used to recognize individuals across websites and apps. *Id.*
¶ 38; *see also id.* ¶¶ 32, 52, 64–65. Plaintiff alleges that Trans Union collects "cookies," "email
addresses, HTTP headers," and "information regarding the users' activity on the websites" "in the
form of full-string URLs and button click events," *id.* ¶ 80, as well as "usage of the particular app
being accessed" and "advertising identifiers" through Trans Union's SDKs, *id.* ¶¶ 111–112.
Plaintiff further alleges that Trans Union "sells" or otherwise monetizes the user data and profiles
through online real-time bidding auctions for digital advertising, although he does not identify any
specific transaction or counterparty. *Id.* ¶¶ 25–26.

### B.    Plaintiff's Alleged Injury And Claims

The Complaint cites news articles about "data brokers" and digital advertising generally,
with minimal, if any, connection to Trans Union. *Id.* ¶¶ 13–24, 25–44.[4] Allegations regarding
Plaintiff's own touchpoints with Trans Union are scarce. Plaintiff alleges that he visited the Bon
Appétit website on or about March 2025 and "selected various articles to read." *Id.* ¶ 161.
According to Plaintiff, "the AGKN Tracker was loaded onto each page of the website" and
collected "the webpages he visited, his IP address, and fingerprint information about his device
and browser, among others." *Id.* ¶¶ 162, 165; *see also id.* ¶ 163. The Complaint does not identify
any sensitive personal information allegedly captured during this single visit, nor does Plaintiff
allege that he entered any data on the website.[5] The Complaint also cursorily asserts that Trans

---

[4] For instance, Plaintiff cites to an article alleging that Google maintains a "shadow profile," and
then casually asserts that the article *similarly applies to* Trans Union. Compl. ¶ 125. Likewise,
Plaintiff spends 13 paragraphs describing a "real time bidding process," *id.* ¶¶ 25–37, and purports
to connect this "ecosystem," *id.* ¶ 158, to Trans Union through a one-sentence allegation that Trans
Union *also* sells data in connection with such bidding, *id.* ¶ 206.

[5] Although Plaintiff's counsel allegedly "conducted testing on several websites" and found
"hundreds or thousands of others where the same or similar information is collected," Compl.
¶ 140, no allegation plausibly connects Trans Union to any of those unnamed websites.

Union collected "communications to/from Plaintiff … regarding their health, travel, shopping habits, consumption of media, loan applications, and many more," despite the implausibility of Plaintiff seeking health information or a loan from Bon Appétit. *Id.* ¶ 248; *see also id.* ¶ 240.

Plaintiff next alleges that Trans Union "compiled" the information allegedly collected during his website visit "into a profile" on him and "added the bolstered profile to TransUnion's suite of data products." *Id.* ¶ 166. Plaintiff claims that Trans Union tracked his "future web browsing activity," *id.* ¶ 167, and assisted other advertising-technology vendors—the so-called "Partner Pixels," *id.* ¶ 77—in tracking his (unspecified) communications with websites. He further alleges that Trans Union derived additional information from "third party vendors who collect additional detailed browsing information" and publicly available information. *Id.* ¶¶ 4, 57.

Plaintiff claims that he was unaware of and did not consent to Trans Union's alleged tracking and sale of his information. *Id.* ¶¶ 168–169. This is belied by the Bon Appétit website's privacy policy, which disclosed that the website and "third-party business partners use various tools and technologies such as cookies, pixels, localStorage, web beacons, software development kits, and similar technologies … to collect data when you interact with … our websites." *See Condé Nast Privacy Notice Overview*, Bon Appétit (Mar. 1, 2025), https://web.archive.org/web/20250301033141/https://www.condenast.com/privacy-policy.[6]

The Complaint asserts four state law claims and a federal statutory claim, alleging that Plaintiff "suffered harms associated with the collection and dissemination of [his] information by

---

[6] Given the centrality of the Bon Appétit webpage to Plaintiff's claims, Compl. ¶¶ 161–169, its privacy policy is properly subject to judicial notice. *Cf. Williamson*, 714 F.3d at 436; *see also Newbold v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 13658554, at *4 n.7 (N.D. Ill. Jan. 23, 2015) (noting that "courts may take judicial notice of undisputed material hosted on a party's public website"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of website privacy policies).

data brokers and a wide dissemination of [his] personal information through the real-time bidding (RTB) process," Compl. ¶ 6:

- Intrusion upon seclusion under California law, *id.* ¶¶ 184–195 (Count I);

- Violation of CIPA § 631(a), *id.* ¶¶ 196–210 (Count II);

- Violation of CIPA § 638.51(a), *id.* ¶¶ 211–223 (Count III);

- Unjust enrichment under California law, *id.* ¶¶ 224–234 (Count IV); and

- Violation of federal Wiretap Act, *id.* ¶¶ 235–255 (Count V).

## III.    LEGAL STANDARD

To survive a Rule 12(b)(1) motion, a plaintiff must demonstrate subject matter jurisdiction, including Article III standing.  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Taha v. Int'l Bhd. of Teamsters, Loc.* 781, 947 F.3d 464, 469 (7th Cir. 2020).

## IV.    ARGUMENT

The Complaint should be dismissed for lack of subject matter jurisdiction, as Plaintiff does not have Article III standing to assert any of his claims.  In the alternative, each claim should be dismissed for failure to state a claim.

### A.    Plaintiff Lacks Standing, Warranting Dismissal Under Rule 12(b)(1)

Article III requires that a plaintiff have suffered an "injury in fact" that is "fairly … trace[able]" to the defendant's conduct and is capable of being redressed by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).  A plaintiff "must demonstrate standing for each claim that they press," *TransUnion*, 594 U.S. at 431, and, "at the pleading stage," "must 'clearly … allege facts demonstrating' each element" of standing.  *Spokeo, Inc. v. Robins*,

578 U.S. 330, 338 (2016) (citation omitted). Here, Plaintiff lacks standing because he alleges neither a cognizable injury nor redressability.

### 1. Plaintiff Fails To Allege A Cognizable Personal Injury

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Instead, the requirement turns on "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 417. Further, "even named plaintiffs who represent a class must allege and show that they *personally have been injured*." *Spokeo*, 578 U.S. at 338 n.6 (citation omitted) (emphasis added).

In *TransUnion*, the Supreme Court held that the alleged Fair Credit Report Act violation did not inflict an Article III injury on those plaintiffs whose credit reports had not been disseminated. 594 U.S. at 417, 439. The Court did so after examining whether the alleged injury was sufficiently analogous to the historical common law tort of defamation and concluding that it was not. *Id.* at 432–439. Similarly, in *Spokeo*, the Court remanded to the Ninth Circuit to consider whether the plaintiff had sufficiently alleged an injury-in-fact based on his claimed violations of the Fair Credit Reporting Act, emphasizing that simply alleging a violation of a statute is insufficient. 578 U.S. at 333, 341–343. Instead, the asserted harm must be sufficiently analogous to a harm recognized at common law to establish standing. *See id.* at 340–343; *see also Dinerstein v. Google, LLC*, 73 F.4th 502, 511–513 (7th Cir. 2023) (same).

Thus, it is not enough for Plaintiff to allege merely that his browsing activity was collected in violation of a statute, be it the Wiretap Act or CIPA. Rather, he must allege facts showing that he *personally* suffered a harm bearing a close relationship to a historical or common law analog.

7

Here, the only conceivable common law analogy is the tort of intrusion upon seclusion—which, not coincidentally, is the one substantive common law claim Plaintiff brings. *See Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023) (rejecting a generalized "invasion of privacy" theory and instead analyzing which of the four common law privacy torts, including intrusion upon seclusion, was most analogous to the asserted harm); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (citing *Nabozny* for the proposition that "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms"); *Rivera v. Google, Inc.*, 366 F. Supp. 3d 998, 1011–1013 (N.D. Ill. 2018) (proper analogy for plaintiff's biometrics privacy claims was to common law privacy torts). Here, Plaintiff has not alleged a personal, concrete harm analogous to the harm traditionally recognized as the tort of intrusion upon seclusion to support his standing. *See Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 980 (7th Cir. 2023) (no standing because a driver's license number was a "neutral fact," not a sensitive or "potentially embarrassing" fact the disclosure of which could support an intrusion upon seclusion claim).

**No Intrusion Upon "Historically Protected" Private Information**. Of the Complaint's 253 paragraphs, ten contain specific allegations about Plaintiff's *personal* experiences. Compl. ¶¶ 161–170. He allegedly visited a single website, Bon Appétit, and read unspecified articles there. *Id.* ¶¶ 143, 161. The "AGKN Tracker" allegedly collected "the webpages he visited, his IP address, and fingerprint information about his device and browser, among others." *Id.* ¶¶ 162, 165.[7] Plaintiff also alleges, without providing any detail, that at least some of "his future web

---

[7] "[F]ingerprint information about [Plaintiff's] device and browser" refers to a device identifier, not to fingerprint biometrics. Compl. ¶ 165; *see Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017) ("Web browsers have several attributes that vary between users, like the browser software version, plugins that have been installed, fonts that are available on the system, the size

browsing activity" was tracked by cookies.  *Id.* ¶ 167.[8]

But browsing articles on the Bon Appétit website is precisely the type of non-sensitive information that the Ninth Circuit recently found insufficient to establish a concrete harm in *Popa v. Microsoft Corp.*  The defendant in *Popa* (Microsoft) allegedly tracked the plaintiff on a pet store website and collected information about her device, browser, operating system, "mouse movements," "URLs of web pages visited," and more.  153 F.4th at 786.  The Ninth Circuit dismissed for lack of standing, reasoning that the plaintiff failed to explain how the alleged tracking of her activity on a *pet store website* would cause "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."  *Id.* at 786, 791.  The same reasoning applies here, as there is nothing remotely personal or sensitive—much less "highly offensive"—about Plaintiff's IP address, device identifiers, or the webpages he viewed on the *Bon Appétit website.  See Kishnani v. Royal Carib. Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("The mere collection of basic contact information … or where the plaintiffs merely visited the website[,] are not concrete harms." (internal quotation marks and citation omitted) (collecting cases)).

Additional case law confirms that none of Plaintiff's allegedly collected information— internet browsing history, IP addresses, and personal identifiers and device "fingerprint" information—is "the type of private information that the law has historically protected."  *See Popa*, 153 F.4th at 787.  Plaintiff therefore fails to identify a cognizable Article III injury:

---

of the screen, color depth, and more.  Together, these attributes create a fingerprint that is highly distinctive."), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

[8] Plaintiff nowhere alleges that he used any mobile application, much less any that incorporates a Trans Union SDK.  As such, his allegations regarding SDKs are irrelevant.

| Information Alleged | Examples of Cases Finding No Injury and No Standing[9] |
|---|---|
| Internet browsing history | • *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5–6 (W.D. Wash. Dec. 21, 2023) (no injury based on alleged collection of "internet browsing activities, internet searches, [] online shopping behavior" and "keyword search terms, URLs, and unique user identifiers and cookies"); <br> • *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same for "URLs of webpages visited," "mouse movements, clicks, keystrokes …, and/or other electronic communications" on airline website). |
| IP address | • *Oganyan v. Biolife Plasma Servs. L.P.*, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025) (no injury from collection of "IP and email addresses, through the third-party trackers"); <br> • *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (same for IP address used to "conduct targeted advertising"). |
| User and device identifiers and browser "fingerprint" information | • *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) (no injury from alleged collection of device and browser information, "geolocation data, email address, mobile ad IDs … [and] cookies"); <br> • *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (same for "device fingerprints" and "geolocation information"); <br> • *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 342, 360–61 (E.D. Pa. 2023) (same for "unique identifiers called 'fingerprints'"). |

**No Injury Based On Compilation Of "Profiles."** Plaintiff's broadbrush allegations that Trans Union "compiled" information "into a profile," Compl. ¶ 166, likewise fail to allege a concrete Article III injury. Having failed to identify any private or sensitive information to begin with, Plaintiff also cannot show that any components of the "profile" are entitled to protection. Indeed, he alleges that Trans Union draws information from multiple sources, including "publicly available sources," which defeats any inference of an injury analogous to intrusion upon seclusion. *Id.* ¶ 57. And insofar as Plaintiff claims that his purported injury arose from the act of *compiling*

---

[9] These cases all address concrete harm in the context of Article III standing. As discussed below, *see infra* Part. IV.B.1, courts also reject similar allegations on 12(b)(6) grounds—as inadequate to state an intrusion upon seclusion claim.

or *dissemination* itself, that reliance is misplaced, as the crux of the tort is the act of *intrusion*, not the subsequent publication or disposition of any information allegedly obtained. *See Nayab v. Cap. One Bank, N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) ("Intrusion upon seclusion 'does not depend upon any publicity given to the person whose interest is invaded or to his affairs.'" (citation omitted)); *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (no claim for invaded seclusion "if the harm flows from publication rather than the intrusion").

**Conclusory Allegations Insufficient To Support Concrete Injury**. Plaintiff's allegations that Trans Union "intercepted" information regarding "health, travel, shopping habits, consumption of media, loan applications, and many more," Compl. ¶ 248, are threadbare conclusions that the Court need not credit—particularly given how far afield most of these categories are from the website Plaintiff browsed. *See Nowlin v. Pritzker*, 34 F.4th 629, 634–635 (7th Cir. 2022) (disregarding legal conclusions unsupported by factual allegations); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing claims for lack of standing where "Plaintiffs allege in a conclusory manner that Defendant disclosed to Meta their personal, confidential, and sensitive medical information" without any "factual support").

**Standing For Common Law Claims**. The same principles apply to preclude Plaintiff's common law claims. *See TransUnion*, 594 U.S. at 431 (holding that "plaintiffs must demonstrate standing for each claim that they press"). These claims rely on the same asserted harm and also fail to rise to the level of a concrete injury cognizable at common law. *See Popa*, 153 F.4th at 787, 794–795 (affirming dismissal of intrusion upon seclusion claims in addition to statutory claims).

**Standing For Pen Register Claim Particularly Deficient**. Finally, Plaintiff's standing for the pen register claim under CIPA § 638.51(a) is particularly deficient. As explained in IV.B.3 *infra*, a pen register claim must be predicated on collection of information *other than* the contents

11

of a communication—specifically, "dialing, routing, addressing, or signaling information." *See* Cal. Pen. Code § 638.50(b). But this information is the type of basic information least able to establish a concrete harm. *See Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (dismissing § 638.51(a) claim for lack of standing for no reasonable expectation of privacy in IP addresses and because it is "unclear" if other data allegedly collected—"the user's MUID, device information, and browser information"—fall within the scope of § 638.51(a)).

### 2. Plaintiff Fails To Allege A Redressable Injury

Plaintiff also fails to allege any injury "fairly … trace[able] to the challenged action of the defendant" and "likely" to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–66.

Although Plaintiff asserts in a conclusory fashion that Trans Union "installed the AGKN Tracker and cookies … on Plaintiff's … browsers," Compl. ¶ 220, he elsewhere alleges that it is unspecified *mobile app developers* who deployed the SDKs and *web developers* that incorporated the so-called "partner" pixels that allegedly "called" the Trans Union pixel. *See id.* ¶ 46 (alleging that Trans Union "allow[ed] website operators to monetize websites by installing Defendant's AGKN Trackers"); *id.* ¶ 47 (alleging that "websites and apps will want to employ Defendant's services"). These allegations are not only fatally contradictory, but insufficient to establish a causal link between any purported harm to Plaintiff and any alleged action by *Trans Union*. This is particularly so given the ubiquity of internet tracking. *E.g.*, *id.* ¶ 125 (describing Google's "Shadow Profile" as a "massive, largely hidden dataset[] of online and offline activities"). Plaintiff thus fails to show that his alleged harm was traceable to, or redressable by, penalizing Trans Union. *See Jacobs v. Hanwha Techwin Am.*, Inc., 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing privacy claim where "defendant is merely a third-party technology provider … and that the active collector and processor of the data is T.J. Maxx").

Accordingly, the Complaint fails for lack of standing pursuant to Rule 12(b)(1).

**B.      Plaintiff Fails To State A Claim, Warranting Dismissal Under Rule 12(b)(6)**

Even if Plaintiff had standing, he has not adequately pleaded any of his claims.

**1.      The Intrusion Upon Seclusion Claim Fails Absent Any Reasonable Expectation Of Privacy Or Highly Offensive Conduct**

An intrusion upon seclusion claim requires that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *see also Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009). Where an allegation "show[s] no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (citation omitted).

These requirements pose a "high bar." *Id.* (observing that "[e]ven disclosure of … social security numbers" does not establish a claim). Determining whether a reasonable expectation of privacy exists involves "a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *In re Facebook Tracking*, 956 F.3d at 602. Courts have further observed that a "reasonable user" should expect that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (dismissing intrusion upon seclusion claim); *see also Thomas v. Papa Johns Int'l, Inc*., 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024) ("Generally, the internet is not a place where users have a reasonable expectation of privacy."), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025); *see also id.* at *3 (collecting cases).

Analyzing the "highly offensive" element similarly requires a "holistic consideration of factors[,] such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social

norms render the intrusion inoffensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022). Courts "have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing privacy claim under California constitution based on "routine commercial behavior").

Plaintiff's allegations that he was "tracked" while browsing the Bon Appétit website, Compl. ¶ 163, do not come close to meeting this high bar. As summarized in the table below, every type of data at issue in the Complaint has been found insufficient to state a privacy claim. Plaintiff's claim is further belied by his conceded awareness of online tracking. *See id.* ¶¶ 14–36; *see Hubbard*, 2024 WL 3302066, at *7 (holding that plaintiff's "recogni[tion]" in its pleadings of "the commonplace collection and sale of such data" "proves fatal to their privacy claims").

| Type of Data Alleged | Examples of Cases Dismissing Privacy Claims |
|---|---|
| IP addresses (Compl. ¶ 80) | • *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("no legally protected privacy interest in IP addresses"). |
| Personal identifiers such as advertising IDs; hashed email addresses; browser and system information; HTTP headers (Compl. ¶¶ 80, 112, 129)[10] | • *Rodriguez v. ByteDance, Inc.,* 2025 WL 672951, at *11–12 (N.D. Ill. Mar. 3, 2025) (no privacy claim based on alleged collection of "user/device identifiers, registration information, and sign-up information"); <br><br> • *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1063 (same for "unique device identifier[s]"); <br><br> • *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–1050 (N.D. Cal. 2022) (same for data breach involving email addresses, phone numbers, usernames, and passwords). |

---

[10] This category includes Plaintiff's casual reference to "cookies," Compl. ¶ 80, which are allegedly "bits of data" "sent to and from your browser to identify you," *id.* ¶ 83. Plaintiff alleges that Trans Union generates ID numbers and stores them in cookies, and as such cookies allegedly act as personal identifiers. *Id.* ¶¶ 44, 83–84.

| Type of Data Alleged | Examples of Cases Dismissing Privacy Claims |
|---|---|
| Browsing history, URLs, button-click events (Compl. ¶ 80) | • *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 973, 988 (allegations that third parties obtained "browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and … the contents of Gmail communications" "do not plausibly rise to the level of intrusion necessary" to state a privacy claim);<br><br>• *Cousin*, 681 F. Supp. 3d at 1126–1127 (same for browsing history);<br><br>• *Ji v. Naver Corp.*, 2022 WL 4624898, at *11 (N.D. Cal. Sept. 30, 2022) (same for video watching history). |
| Location information (Compl. ¶ 80) | • *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1063 (third-parties obtaining geolocation and other information without consent "does not constitute an egregious breach of social norms");<br><br>• *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–993 (2011) (same for obtaining a physical mailing address and sending advertisements);<br><br>• *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198–199 (N.D. Cal. 2019) (doubting that storing geolocation data violated a privacy interest). |

Further, as previously discussed, Plaintiff's allegations about "profiles" miss the point of the intrusion upon seclusion tort, which does not concern any subsequent publication or use of the data. *See Nayab*, 942 F.3d at 491. And Plaintiff's allegations that unspecified "loan" or "health" data was "intercepted," Compl. ¶ 248, are fatally conclusory and speculative (as well as implausible given the website at issue). "Allowing such conclusory and speculative pleading to survive a Rule 12(b)(6) motion to dismiss would obliterate the 'high bar' set for establishing an invasion of privacy claim." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 199; *see also id.* (dismissing California common law privacy claims based on geolocation tracking where plaintiffs alleged that defendants "could have" tracked them but did not specify where or how often they were tracked); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (rejecting as "fatally conclusory" plaintiffs' allegations that their "emails were 'private' without

[plaintiffs] alleging any facts related to what particular emails Yahoo intercepted, or the content within particular emails").

Plaintiff's intrusion upon seclusion claim therefore should be dismissed.

### 2. The CIPA Wiretapping Claim Fails Absent Allegations Of "Content" Collection Or "In Transit" Interception

Plaintiff's wiretapping claim under CIPA § 631(a) should be dismissed. As Judge Chhabria recently cautioned, CIPA—a criminal statute—must be construed narrowly to avoid imposing expansive civil liability beyond the legislative intent, especially given the poor fit between CIPA and commonplace digital advertising. *See Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (holding that the rule of lenity applies even when an ambiguous criminal statute "is being invoked in a civil action"); *id.* at *6 (questioning whether the California legislature "really intend[ed] to subject companies … to criminal liability for using third-party software to track website activity").

Plaintiff alleges that "Partner Pixel Vendors" violated the second clause of § 631(a), and that Trans Union violated the third and fourth clauses, which impose liability on a person who:

2. "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state,"

3. "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or

4. "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

Cal. Pen. Code § 631(a); *see* Compl. ¶¶ 205–207. Because Plaintiff fails to allege the requisite "content," let alone that the interception of such "content" was "in transit," he states no claim under the second clause against anyone. And because violation of the second clause is a predicate for a claim under the third or fourth clause, his § 631(a) claim against Trans Union fails under those

clauses as well.  *See Doe*, 2025 WL 2971090, at *4 (no violation of the third or fourth clauses of § 631(a) absent violation of the second clause).

**No Collection Of "Content."**  Plaintiff fails to adequately allege that Trans Union has read, attempted to read, or learned "*the contents or meaning*" of a message, report, or communication.  *See* Cal. Pen. Code § 631(a) (emphasis added).  Courts look to the federal Wiretap Act to interpret the term "contents" in CIPA, and the Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of [a] communication."  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting 18 U.S.C. § 2510).  "[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information."  *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *5 (N.D. Ill. Sept. 9, 2024) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).

Here, none of the information that Trans Union allegedly collected constitutes "contents." Rather, nearly all of Plaintiff's allegations involve quintessential record information such as "cookies, IP addresses, email addresses, HTTP headers," "location information, and other unique identifiers associated with web addresses," as well as advertising identifiers.  *See* Compl. ¶ 80. Courts routinely reject such information as "contents" under the Wiretap Act.  *See, e.g.*, *Vasil v. Kiip, Inc*., 2018 WL 1156328, at *2–4 (N.D. Ill. Mar. 5, 2018) (location information not, as pled, "contents"); *In re Zynga Priv. Litig.*, 750 F.3d at 1105–09 (same for HTTP "referer header information" such as a Facebook user ID and webpage address).

Plaintiff appears to claim that "full-string descriptive URLs" are "contents."  Compl. ¶ 104. But even if that were right in theory, Plaintiff acknowledges that only "some" URLs are "full-string descriptive URLs" "depending on the design of the website," *id.*, yet never alleges that *he personally* visited any such website or that any full-string descriptive URL was otherwise

17

transmitted to Trans Union. *See id.* ¶ 105 (no allegation that Plaintiff ever visited the Zillow website which is allegedly an example of "descriptive URL"). His resort to alleged tracking of "website page visits, selections, bookings, [and] appointment information" as potential content also fails, *id.* ¶ 240, as this conclusory allegation falls short of showing that any of his communications was actually intercepted by Trans Union.

**No "In Transit" Interception**. Plaintiff does not sufficiently plead that any alleged interception occurred "while [the communication] is in transit," as required by § 631(a). Cal Pen. Code § 631(a). Settled law holds that the "read[ing]" or "attempt[ing] to read" must occur while the communication is in transit. *See Doe*, 2025 WL 2971090, at *7. However, Plaintiff's only allegation regarding "in transit" boils down to a mere recitation of the statutory language: "the Partner Pixel Vendors … read, attempted to read, and learned the contents the electronic communications [sic] … while the electronic communications were in transit or were being sent from or received at any place within California." Compl. ¶ 205. Courts have repeatedly rejected such conclusory allegations. *See Heiting v. Taro Pharm. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) (dismissing CIPA § 631 claims for conclusory pleading of "in transit"); *Valenzuela v. Super Bright LEDs Inc*., 2023 WL 8424472, at *8–10 (C.D. Cal. Nov. 27, 2023) (same) (collecting cases); *see also Arast v. Pendelton*, 2014 WL 5469933, at *4 (N.D. Ill. Oct. 28, 2014) (dismissing *Monell* claims where the complaint contained only "conclusory allegations that parrot the necessary elements of *Monell* liability").

**No Intent To Aid and Abet**. Finally, insofar as Plaintiff purports to assert an "aiding and abetting" claim under the fourth clause of § 631(a), *see* Compl. ¶ 207, he fails to allege that Trans Union acted with the requisite intent—which, "[a]t the very least," requires a showing of "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or

employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (dismissing claim under fourth clause absent sufficiently alleged intent); *cf. Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025) ("[A]iding and abetting usually requires misfeasance rather than nonfeasance.").

### 3. Plaintiff Fails To Plead A CIPA Pen Register Claim

Plaintiff's CIPA § 638.51(a) claim alleges that "the AGKN Tracker and cookies" constitute "pen registers," which Trans Union "installed" on Plaintiff's "browsers." Compl. ¶ 220. This expansive reading of § 638.51(a) is meritless.

As relevant here, CIPA § 638.51(a) prohibits "install[ing] or us[ing] a pen register … without first obtaining a court order." Cal. Pen. Code § 638.51(a). A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but *not the contents of a communication*." *Id.* § 638.50(b) (emphasis added). Here, the Complaint repeatedly makes the conclusory allegation that the "AGKN Tracker" collects the *contents* of communication between Plaintiff and websites. *See, e.g.*, Compl. ¶ 248 (alleging "Defendant intercepted … *communications* to/from Plaintiff and Class members regarding their health" (emphasis added)); *id.* ¶ 250 (alleging "Defendant intentionally intercepted the *contents* of Plaintiff's and Class Members' electronic communications" (emphasis added)). Such conclusory allegations, if credited, end Plaintiff's § 638.51(a) claim because a pen register is a device that does *not* collect contents—and basing a § 638.51 claim on the collection of *contents* is grounds for dismissal. *See Kishnani*, 2025 WL 1745726, at *4 (explaining that dismissal of § 638.51 claims based on alleged collection of "content" was appropriate because "if that type of information is collected, the statute ceases to apply").

*Further*, a § 638.51 violation requires that the defendant have affirmatively "install[ed] or

19

use[d]" a pen register. Cal. Pen. Code § 638.51(a). Here, not only are Plaintiff's allegations that Trans Union "installed" "[t]he AGKN Tracker"[11] or "cookies" on his browser conclusory, Compl. ¶ 219, such allegations are also contradicted by more specific allegations elsewhere that third-party web developers or mobile app developers installed the pixels or SDKs. *Id.* ¶ 74 ("A pixel is a piece of code that website operators can integrate into their websites …."); *id.* ¶ 108 ("An SDK is a 'set of tools for developers ….'"); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("[O]ur pleading rules do not tolerate factual inconsistencies in a complaint[.]").

*Finally*, as its legislative history shows, § 638.51(a) applies only to devices used with telephonic communications, *not* internet communications. CIPA §§ 638.50–638.53 were all added to the statute by Assembly Bill 929 in 2015. *See* A.B. 929, 2015 Gen. Assemb., Reg. Sess. (Ca. 2015), http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_bill_20150813_ chaptered.html. These provisions are closely related: § 638.51(a) prohibits most uses of pen registers, and §§ 638.52 and 638.53 provide for authorizing court orders. Section 638.52 would be nonsensical if read to apply beyond telephonic communications—for example, it requires identification of the name in which the "telephone line" is listed and "[t]he number and, if known, physical location of the telephone line." Cal. Pen. Code § 638.52(d)(1)–(3). In light of this legislative context, a California court recently held that § 638.51(a) referred to devices used with telephones, "not internet communications such as websites." *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025). While the Complaint identifies a handful of out-of-circuit district court decisions to the contrary, *see* Compl. ¶ 218, *Sanchez* has the better of the argument, as it holistically addresses the full statutory scheme.

---

[11] Plaintiff's allegation that anyone "installed" "[t]he AGKN Tracker" *onto a web browser*, Compl. ¶ 219, is further contradicted. *See id.* ¶ 5 (defining the AGKN Tracker as "a combination of web pixels and SDKs" which are "loaded" onto *websites* and *mobile apps* respectively).

### 4. The Federal Wiretap Act Claim Fails On Multiple Grounds, Including The One-Party Consent Rule

Plaintiff's claim under § 2511(1)(a) and (d) of the federal Wiretap Act fails for multiple, independent reasons. Section 2511(1) imposes liability on anyone who:

> "(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," or

> "(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection."

18 U.S.C. § 2511(1)(a), (d).

**No "Content."** As an initial matter, Plaintiff does not identify any information that constitutes "content" under the Electronic Communications Privacy Act of 1986 ("ECPA").[12] This requirement parallels that under CIPA § 631 and is not met for the same reasons that Plaintiff's CIPA § 631 claim fails. *See supra* Part IV.B.2; *Brodsky*, 445 F. Supp. 3d at 127 ("The analysis [of content] for a violation of CIPA is the same as that under the federal Wiretap Act.").

**No Interception During Transmission**. Plaintiff also fails to sufficiently allege that any communications were intercepted contemporaneously with transmission, as required by "[e]very court of appeals to consider the issue." *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *8; *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (requiring "acqui[sition] during transmission" "consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival'" (citation omitted)). This requirement is akin to the "in transit" requirement of CIPA § 631(a), *see supra* Part IV.B.2, and Plaintiff's lone,

---

[12] Section 2511(1)(d) explicitly requires "contents." 18 U.S.C. § 2511(1)(d). Section 2511(1)(a) also requires "content" through the definition of "intercept" in § 2510(4). *Id.* § 2511(1)(a).

conclusory allegation that interception occurred "in transit," Compl. ¶ 205, merely recites the statutory language and cannot survive a motion to dismiss. *See Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *8 (rejecting Wiretap Act claim as "purely conclusory" where "the Court cannot reasonably infer that the communications were intercepted in real-time"); *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) (dismissing Wiretap Act claim for inadequate pleading of contemporaneous interception).

**One-Party Consent**. Plaintiff's claim runs headlong into another problem: the Wiretap Act is a one-party consent statute. No liability attaches "where one of the parties to the communication has given prior consent," unless "such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Here, Plaintiff's own allegations show that web developers and mobile app developers *choose* to incorporate Trans Union's pixels or SDKs into their websites or mobile apps—and thus gave consent. *See* Compl. ¶ 74 ("A pixel is a piece of code that website operators can integrate into their websites …."); *id*. ¶ 108 ("An SDK is a 'set of tools for developers ….'"). This defeats Plaintiff's § 2511 claim. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (no violation where "alleged interceptions occurred with the consent of app developers").

The crime-tort exception to the one-party consent rule does not salvage Plaintiff's claim. *First*, analysis of criminal or tortious purposes focuses on intent *at the time of the interception*. In *Desnick v. American Broadcast Co.*, the Seventh Circuit held that the one-party consent rule applied to taping inside a medical practice because "[t]he defendants did not order the camera-armed testers into the … premises in order to commit a crime or tort." 44 F.3d 1345, 1353 (7th Cir. 1995). Even though the eventual broadcast of the television program was "[m]aybe" tortious, the appellate court found that the intent at the time of filming was "to see whether the

Center's physicians would recommend cataract surgery," not to "defam[e] the plaintiffs." *Id.*

Here, the purpose of any alleged interception was not to commit a separate tort. Rather, the Complaint itself alleges that Trans Union's purpose was to collect and sell data for use in targeted advertising. *See, e.g.*, Compl. ¶ 248 (alleging that Trans Union adds information "to consumer profiles and monetize[s it] for targeted advertising purposes, among other things"). This activity is neither criminal nor tortious. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (data broker did not possess the requisite purpose to commit a tort); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518–19 (S.D.N.Y. 2001) (defendant's "technology and business strategy" was publicly promoted and "[defendant's] purpose has plainly not been to perpetuate torts on millions of Internet users"). Nor does Plaintiff allege that Trans Union acted with the *specific intent* to *knowingly* commit a separate violation of any law. *See Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing claims because defendant who used "trackers" for "marketing and advertising purposes" lacked "specific intent" of "kn[owing] its acts were in violation of the HIPAA").

*Second*, and insofar as Plaintiff contends that the alleged compilation of "profiles" is tortious or criminal, Compl. ¶ 251, this theory falls outside the Wiretap Act, which does not govern the use of information after collection. *Zak v. Bose Corp.*, 2019 WL 1437909, at *4 (N.D. Ill. Mar. 31, 2019) ("To the extent [plaintiff's] real issue is with the fact that Bose allegedly collects and discloses the Media Information that it legitimately receives, this complaint falls outside the purview of the Wiretap Act."). Nor is there anything inherently tortious in being a data broker— a regulated activity under California law. *See* Compl. ¶ 15. And, to the extent Plaintiff relies on the alleged wiretapping itself to establish a tortious act, that theory fails for its circularity. *See Thomas*, 998 F.2d at 451 ("[Plaintiff] does not allege that [defendant] has broken any laws other

than the wiretapping law itself, which we presume does not destroy the [one-party consent] exemption.").

Moreover, Plaintiff's "profile" allegations "lack the detail necessary to plausibly invoke the crime-tort exception." *Hannant v. Culbertson*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (concluding that "[p]laintiff's allegations of her own experience, as opposed to a potential class member," were insufficient to invoke the exception). Plaintiff does not specify any specific information subsumed within his alleged profile, or any counterparties to which any such profile might have been exposed. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (no crime-tort exception where plaintiff failed to sufficiently plead "how the hypothetical data disclosures" would trigger HIPAA liability).

The cases Plaintiff cites in support of his "profiles" theory are inapposite. *See* Compl. ¶ 251. In *Brown v. Google LLC*, for instance, the court relied on violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), intrusion upon seclusion, and invasion of privacy as the tort. *See* 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). CDAFA claims are not at issue here, and *Brown*'s finding about the common law torts was based in part on Google's affirmative *misrepresentations* about data collection, also not at issue. *See id.* at 1077.

*Finally*, Plaintiff cannot rely on any of his other deficient claims to establish the crime-tort exception. *See Kurowski Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) ("The other criminal or tortious purposes … are either duplicative of the allegedly unlawful wiretapping itself or relate to claims that the Court has determined have failed.").

### 5. Unjust Enrichment Is Not A Standalone Claim And Did Not Occur

As a threshold matter, because "California does not recognize a separate cause of action for unjust enrichment," Plaintiff's unjust enrichment claim fails along with his other claims. *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) (citation omitted).

24

The claim also fails on the merits because Plaintiff fails to allege the requisite "receipt of a benefit and unjust retention of the benefit at the expense of another." *Williams v. Visa, Inc.*, 2025 WL 1518044, at *5 (N.D. Cal. May 28, 2025) (citation omitted).

*First*, Plaintiff does not allege "receipt of a benefit" by Trans Union. Allegations that Trans Union obtained "substantial profits" and "economic benefit" from Plaintiff's data, Compl. ¶¶ 227–228, should be rejected as "purely conclusory" where Plaintiff "ha[s] not pleaded any description of the 'personal information' that Defendants' [sic] allegedly used." *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020).

*Second*, Plaintiff does not explain why any alleged benefit would be "unjust." Plaintiff alleges that Trans Union benefited from "targeted advertising," Compl. ¶ 248, but advertising supports free content on the internet—indeed, Plaintiff enjoyed free access to the Bon Appétit website. *See Katz-Lacabe*, 668 F. Supp. 3d at 946 n.11 (plaintiffs "must explain why the access they received to those websites would not defeat the unjust enrichment claim").

*Third*, any alleged benefit was not conferred at Plaintiff's expense, as he does not allege that he expended his own resources or lost value in his personal data. *See id.* at 946 (dismissing unjust enrichment claim absent a showing that plaintiff "directly expend[ed] his or her own financial resources" or that defendant "caused the plaintiff's property to become less valuable").

## V.     CONCLUSION

The Court should dismiss this suit for lack of standing under Rule 12(b)(1) or, in the alternative, for failure to state a claim under Rule 12(b)(6).

Trans Union's counsel conferred with Plaintiff's counsel and the Parties respectfully propose the following briefing schedule: Plaintiff's Opposition to be filed by January 20, 2026; Trans Union's Reply to be filed by February 19, 2026.

Dated: December 4, 2025                Respectfully submitted,

/s/ *Gary Feinerman*
Gary Feinerman (IL 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Melanie M. Blunschi (*pro hac vice*)
Rebecca Kopplin (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
melanie.blunschi@lw.com
rebecca.kopplin@lw.com

Hanyu (Iris) Xie (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
iris.xie@lw.com

*Attorneys for Defendant Trans Union LLC*